# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

No. 11 Civ. 606 (RJS)

LLEWELLYN CONNOLLY, *ET AL.*,

Plaintiffs,

VERSUS

CEM KINAY, *ET AL.*,

Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-27-12

OPINION AND ORDER
March 27, 2012

RICHARD J. SULLIVAN, District Judge:

Plaintiffs bring this diversity action against Defendants Cem Kinay, Marjorie Kinay, Halis Sumer, and Mer Insaat (collectively, the "Kinay Defendants") for claims relating to the failed development of a luxury mixed-use property (the "Project") on the island of Dellis Cay, located in the Turks and Caicos Islands ("TCI"). The crux of Plaintiffs' Complaint is that Cem Kinay, with the help of the other Kinay Defendants, induced Plaintiffs to invest in the Project, siphoned funds from the Project for personal use, failed to complete the Project, and ultimately walked away from the incomplete Project. Before the Court is the Kinay Defendants' motion to dismiss on *forum non conveniens* grounds. For the reasons that follow, the Kinay Defendants' motion is granted.

I. BACKGROUND

A. Facts

Plaintiffs in this case include individuals Llewellyn Connolly, Edward Razek, Thomas Walker III, Andrey Ivanov-Galitsyn, Estefano Isias, Stéphane and Sandrine Pictet, Thomas Singh, Michael Topr, Mikal and Tammy Watts (collectively, the "Individual Plaintiffs"), as well as corporate entities Dodgar Partners Ltd., Ocean Villa 4 (D.C.) Ltd., Beach Villa V. D.C. Ltd., Villa 7 Dellis Cay Ltd., Salinas on the Beach Ltd., Upwey Ltd., Ocean Villa 2 (D.C.) Ltd., and 313TW Caribbean

Investment Ltd. (collectively, the "Corporate Plaintiffs").[1]

In their Complaint, Plaintiffs describe a "massive fraud that was perpetrated against Plaintiffs in connection with the marketing, financing and development of a promised luxury mixed-use property on the island of Dellis Cay, located in the Turks and Caicos Islands." (Compl. ¶ 1.) In short, Plaintiffs allege that Cem Kinay ("Kinay"), an Austrian national and Florida domiciliary, was the mastermind behind the Project, and successfully bilked Plaintiffs out of millions of dollars through a "web of alter-ego entities" with his business partner, Oguz Serim ("Serim"), an Austrian citizen and domiciliary of Turkey. (*Id.* ¶ 2, 58.) The other Kinay Defendants are Marjorie Kinay, Kinay's wife who is a United States citizen and Florida domiciliary, and Halis Sumer, the principal of a Turkish construction company and a Turkish citizen and domiciliary. (*Id.* ¶¶ 85, 99-100.) Plaintiffs allege that both Marjorie Kinay and Halis Sumer were complicit in Kinay's scheme. (*Id.* ¶ 101.)

According to the Complaint, Kinay and Serim purchased Dellis Cay in 2005 and then marketed the Project to "wealthy people as a one-of-a-kind opportunity that would feature the utmost in luxury and exclusivity." (*Id.* ¶ 4.) Plaintiffs allege that Kinay and Serim enlisted the assistance of lenders Trinidad and Tobago Unit Trust Corporation ("TTUTC") and the Mandarin Oriental Management (BVI) Ltd. – both former Defendants in the instant case -- as well as several alter-ego corporations controlled by Kinay to finance, market, and develop the Project. (*Id.* ¶¶ 5, 11, 8.) Plaintiffs further allege that "New York residents were a principal focus of Kinay's and Serim's marketing efforts." (*Id.* ¶ 115.) To that end, Kinay and Serim held marketing events in New York (*id.* ¶¶ 118, 119, 120), retained a New York-based marketing consultant (*id.* ¶ 116), and featured the Project in New York publications (*id.* ¶¶ 121-124).

With the exception of Stéphane and Sandrine Picet, both Swiss citizens and domiciliaries, the Individual Plaintiffs formed corporations under TCI law with the assistance of counsel to pursue their investment in the Project. (*Id.* ¶¶ 41-57; Decl. of Llewellyn Connolly, dated Aug. 26, 2011, Doc. No. 79 ("Connolly Decl."), ¶ 4; Decl. of Michael Topr, dated Aug. 26, 2011, Doc. No. 81 ("Topr Decl."), ¶ 4; Decl. of Edward Razek, dated Aug. 26, 2011, Doc. No. 82 ("Razek Decl."), ¶ 4; Decl. of Mikal Watts, dated Aug. 26, 2011, Doc. No. 83 ("Watts Decl."), ¶ 4.) According to their declarations, the Individual Plaintiffs formed the Corporate Plaintiffs "after they had already been induced by the Kinay Defendants' misrepresentations to purchase [v]illas." (Pl. Mem. 3; Connolly Decl. ¶ 6; Topr Decl. ¶ 6; Razek Decl. ¶ 6; Watts Decl. ¶ 6.) Plaintiffs maintain that the sole purpose of the Corporate Plaintiffs was to invest in the scheme. (Pl. Mem. 6.) Importantly, however, the Individual Plaintiffs do not allege, in the Complaint or elsewhere, that they were fraudulently induced to form the Corporate Plaintiffs themselves. Rather, the Individual Plaintiffs, with the exception of the Pictets,

---

[1] The facts cited herein are taken from the Complaint ("Compl."). In ruling on the instant motion, the Court has considered Defendant's Memorandum of Law in Support of the Motion to Dismiss ("Def. Mem."); Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Mem."); Defendants' Reply in Support of the Motion to Dismiss ("Reply"); as well as the various declarations and exhibits accompanying these documents. The Court has also considered the affidavits submitted by the parties on March 19, 2012 concerning the status of separate parallel actions taking place in TCI. (Doc. Nos. 100, 101, 102.)

2

evidently chose to so structure their investments in the Project freely, with the assistance of counsel. (Connolly Decl. ¶ 4; Topr Decl. ¶ 4; Razek Decl. ¶ 4; Watts Decl. ¶ 4.)

The contemplated investment was to be executed in the following manner: through designated corporate entities, the Plaintiffs each purchased a residential lot and contracted with Kinay and his entities for the delivery of a villa thereon. (Compl. ¶ 174.) Although the Complaint does not discuss the underlying contracts relating to the Project, the purchase and sale agreements included a forum selection clause, which provided that "[t]his Agreement is made and shall be performed in the Turks and Caicos Islands. The parties consent to the exclusive jurisdiction of the Supreme Court of the Turks & Caicos Islands in respect of all matters arising [under the agreements]." (Aff. of Todd E. Soloway, dated Mar. 19, 2012, Doc. No. 101 ("Soloway Aff."), Ex. 1 at 12; Ex. 2 at 12; Ex. 3 at 12; Ex. 4 at 12; Ex. 5 at 12; Ex. 6 at 11; Ex. 7 at 12; Ex. 8 at 12; Ex. 9 at 12.) The villas were to be paid for via installment payments – or "stage" payments – contingent on the completion of certain development milestones. (Compl. ¶ 176.) The Complaint alleges that as the Individual Plaintiffs continued to invest – again, through their designated corporate entities or in the case of the Pictets, individually – Kinay knew that the Project was insolvent and was going to collapse, and spent Plaintiffs' investment funds on personal expenditures, bribes to government officials, and unrelated investments. (*Id.* ¶¶ 9, 305, 307, 309, 314, 315, 316, 326.)

In July 2009, a Commission of Inquiry was established to investigate corruption in the Turks & Caicos government. (*Id.* ¶ 33.) The Commission found that Kinay "likely had engaged in illegal activity and suggested a criminal investigation be launched." (*Id.* ¶ 34.) Shortly after the Commission's finding, Kinay began to shut down the Project. (*Id.* ¶ 36.) Kinay publicly announced the halt of the Project on October 12, 2009, leaving Plaintiffs as the owners of "barren parcels of land containing partially built [v]illas and surrounded by a construction wasteland." (*Id.* ¶ 37.) Collectively, Plaintiffs allegedly lost over $50 million as a result of Kinay's scheme. (*Id.* ¶ 39.)

B. Procedural History

Plaintiffs initiated this action on January 28, 2011, asserting the following claims against Cem Kinay: (1) fraud; (2) negligent misrepresentation; (3) breach of fiduciary duty; (4) breach of the covenant of good faith and fair dealing; (5) conversion; (6) negligence; (7) fraudulent conveyance; (8) attorneys' fees; (9) accounting; and (10) violation of N.Y. Gen. Bus. Law § 349. Plaintiffs also asserted a claim for unjust enrichment against all the Kinay Defendants.

In addition to the Kinay Defendants, the Complaint also named Oguz Serim, O Property Collection USA, Inc., O Property Collection GMBH, O Property Collection TCI Ltd., Turks Development L.P., Turks General Partners Ltd., Turks (B.V.I.) Holdings Ltd., Turks Ltd., Dellis Construction Ltd., William Tacoon as Receiver of Turks Development L.P. and Turks Ltd., Stephen Katz as Provisional Liquidator of Dellis Construction Ltd., Cenk Kinay (Cem Kinay's brother), Mandarin Oriental Hotel Group International Ltd. and Mandarin Oriental Management (BVI) Ltd., Mer Insaat (a Turkish construction company of which Halis Sumer was the principal),

Avatar Real Estate Services, LLC, TTUTC, and the SUU Hotels.[2]

In time, Plaintiffs voluntarily dismissed claims against several Defendants. For example, claims against William Tacon were dismissed on June 17, 2011; claims against TTUTC were dismissed on June 17, 2011; claims against the Mandarin Oriental Defendants were dismissed on June 20, 2011; claims against Avatar Real Estate Services, LLC were dismissed on June 23, 2011; claims against Dellis Construction Company were dismissed on July 29, 2011; and claims against Stephen Katz were dismissed on July 29, 2011.

On November 11, 2011, Plaintiffs commenced a proceeding against TTUTC, Mandarin Oriental Hotel Group International Ltd., Mandarin Oriental Overseas Management Ltd., and Mandarin Oriental Management (BVI) Ltd. in the TCI Supreme Court (the "TCI Action"). (Soloway Aff. ¶ 9, Ex. 11.) In the complaint filed in the TCI Action, Plaintiffs allege "that they were induced to invest in the Project, and to continue to invest in it, as a result of fraudulent and/or negligent misrepresentations made by Kinay and Serim." (*Id.* Ex. 11 at 2.) Though they do not name the Kinay Defendants as defendants in the TCI Action, the complaint describes the "New York Defendants," including Kinay and Serim (*id.* at 5-7), as well as the alleged fraud perpetrated by those individuals (*id.* at 7-32). Essentially, the allegations put forth in the complaint in the TCI Action reiterate the factual allegations in the above-captioned case. (*See id.*)

Additionally, at some point TTUTC initiated a lawsuit against Cem Kinay and Oguz Serim in TCI, resulting in a judgment being entered against Kinay and Serim in the amount of $85,037,331.61. (Aff. of Joseph L. Ruby, dated Mar. 19, 2012, Doc. No. 102 ("Ruby Aff."), at ¶ 13.) On March 24, 2011, the TCI Supreme Court issued an order called a "Mareva injunction" or "freezing order," whereby "all assets of Messrs. Kinay and Serim, wherever they may be found, [were] made subject to the jurisdiction of the Court and restrained from disposition for any purpose other than to pay the judgment." (*Id.*)

The Kinay Defendants filed the present motion in this case on July 21, 2011. Plaintiffs filed their opposition papers on August 26, 2011, and the motion was fully briefed on September 9, 2011. By Order dated March 9, 2012, the Court directed the parties to submit affidavits attaching the contracts and agreements, including the forum selection clause, related to the Project. (Doc. No. 99.) The Court also ordered the parties to inform the Court of the status of litigation, in TCI and elsewhere, involving current and former parties to the instant case. (*Id.*) On March 19, 2012, the Court received affidavits with attachments from the Kinay Defendants (Doc. No. 100), Plaintiffs (Doc. No. 101), and former Defendant TTUTC (Doc. No. 102).

## II. DISCUSSION

"The doctrine of *forum non conveniens* is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370

---

[2] Plaintiffs allege subject matter jurisdiction under 28 U.S.C. § 1332 "because the action is between citizens of different States and citizens or subjects of a foreign state are additional parties, and because the amount in controversy is more than $75,000." (Compl. ¶ 103.)

F.3d 234, 237 (2d Cir. 2004) (internal citations and quotation marks omitted). The Supreme Court has explained,

> A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (alterations and internal quotation marks omitted). *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981) ("[D]ismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice."); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947) (describing the principle of *forum non conveniens* as "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."). Because *forum non conveniens* is "a nonmerits ground for dismissal," a district court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem*, 549 U.S. at 432.

In this Circuit, a district court must consider three factors when analyzing a motion to dismiss on *forum non conveniens* grounds: (1) the extent to which the plaintiffs' choice of the U.S. forum is entitled to deference; (2) the adequacy and availability of the foreign forum; and (3) the balancing of various public and private interests. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)). To prevail under the three-pronged test, "[t]he defendant bears the burden of establishing that a presently available and adequate alternative forum exists, and that the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

Having considered all of the factors, the Court determines that this case is appropriately dismissed based on the doctrine of *forum non conveniens*.

A. Deference to Plaintiffs' Choice of Forum

Although "[a]ny review of a *forum non conveniens* motion begins with 'a strong presumption in favor of the plaintiff's choice of forum,'" *Norex*, 416 F.3d at 154 (quoting *Piper Aircraft*, 454 U.S. at 255)), "the degree of deference given to a plaintiff's forum choice varies with the circumstances," *Iragorri*, 274 F. 3d at 71. A plaintiff's choice of forum is entitled to greater deference when the plaintiff has sued in his home forum than when a foreign plaintiff chooses the United States as a forum. *Id.* (citing *Piper Aircraft*, 454 U.S. at 255-56 (1981)).

Plaintiffs in this action are comprised of the Individual Plaintiffs – the individuals who financed the Project – and the Corporate Plaintiffs – the corporate entities formed by most of the Individual Plaintiffs to execute the investment. Some of the

5

Individual Plaintiffs are American citizens and residents, and some are foreign citizens and residents; in all, viewing the facts in the light most favorable to the Plaintiffs, seven out of the eleven Individual Plaintiffs have a connection to New York, and the remaining four are foreign residents and domiciliaries. The Corporate Plaintiffs, on the other hand, are all TCI-incorporated entities.

A court's determination of "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." *Id.* "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Id.* at 72 (footnotes omitted). On the other hand, where it appears that a plaintiff has chosen a U.S. forum for forum-shopping reasons, such as "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case [or] the habitual generosity of juries in the United States," *id.*, dismissal is more likely to be appropriate.

Factors considered in determining whether a plaintiff's choice of forum was likely to have been motivated by convenience include:

> [1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (citing *Iragorri*, 274 F.3d at 72). Factors indicative of forum shopping include:

> [1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum.

*Id.* (citing *Iragorri*, 274 F.3d at 72.).

Though several Plaintiffs have connections to the United States for the purposes of *forum non conveniens* analysis, under Second Circuit case law, "there is not a 'rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for *forum non conveniens*.'" *BlackRock, Inc. v. Schroders PLC*, No. 07 Civ. 3183 (PKL), 2007 WL 1573933, at *4 n.2 (S.D.N.Y. May 30, 2007) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000)). Thus, courts in this district have often found that plaintiffs should be given less than "significant" deference despite American citizenship or residence. For example, in *Wilson v. ImageSat Int'l N.V.*, No. Civ. 6176 (DLC), 2008 WL 2851511 (S.D.N.Y. July 22, 2008), the court held that the plaintiffs' choice of an American forum was "entitled to some, but minimal, deference" when only about half of the fifteen plaintiffs were United States residents or legally connected to United States residents and when "many of the claims asserted . . . [were] derivative

6

claims and thus belong[ed] to the corporation, which [was] Netherlands Antillean." *Id.* at *4. In this case, at most seven of the eleven Individual Defendants are United States residents or have some connection to the United States. (Pl. Mem. 12.) All the Corporate Plaintiffs are TCI residents. (*Id.*) Weighing these facts, and also acknowledging that many of the claims asserted in the Complaint appear to be derivative claims properly asserted on behalf of the Corporate Plaintiffs only, the Court concludes that Plaintiffs are not entitled to the great amount of deference reserved for United States citizens' choice of a United States forum.[3]

It is important to note from the outset that this is a case involving TCI property, TCI corporations, the TCI government, and contracts that were subject to TCI law. For that reason, logic dictates that the litigation would be far more convenient if it took place in TCI. Plaintiffs allege that the Kinay Defendants specifically marketed the Project in New York to New Yorkers, but, as set forth in more detail below, evidence – both documentary and testimonial – relating to the causes of action asserted against the Kinay Defendants in Plaintiffs' Complaint is not primarily in New York. *See Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 332 (S.D.N.Y. 2008) (concluding that plaintiffs' choice of forum was not entitled to substantial deference because none of the plaintiffs were U.S. citizens and "none of the significant events occurred in this jurisdiction"); *Wilson*, 2008 WL 2851511, at *4 ("[M]ost of the relevant events took place in Israel and . . . [a]lthough the plaintiffs have identified scores of individuals from the Western Hemisphere who may have knowledge relevant to their claims, the fact remains that the most critical evidence about the decisions of which the plaintiffs complain is in the possession of Israeli witnesses.").

Furthermore, the Kinay Defendants "have made it clear to Plaintiffs and this Court from day one that they are *not* amenable to suit before this Court." (Reply 8 (emphasis in original).) This is not particularly surprising, given that the Kinay Defendants are apparently in the midst of defending against other lawsuits and criminal investigations in TCI based on similar facts and allegations. (Pl. Mem. 14 n.9; Ruby Aff. ¶ 13.)

Equally pertinent is the fact that Plaintiffs themselves have commenced a parallel action in TCI. Thus, while the Court will not presume that Plaintiffs are forum shopping by simultaneously pursuing the Kinay Defendants in New York and other defendants in the courts of TCI, it nevertheless bears noting that Plaintiffs have chosen to prosecute essentially the same allegations, coming from the same

---

[3] Because this is a motion to dismiss for *forum non conveniens* and not a motion to dismiss the Individual Plaintiffs on standing grounds, the Court will refrain from ruling on whether the Complaint makes factual allegations sufficient to overcome the "well-established principle of law that a shareholder in a corporation does not have standing to assert claims alleging wrongs to the corporation." *Feinberg v. Katz*, Nos. 99 Civ. 0045 (CSH), 01 Civ. 2739 (CSH), 2005 WL 2990633, at *4 (S.D.N.Y. Nov. 7, 2005). However, the Court notes that at the very least, many of the causes of action address wrongs committed against the Corporate Plaintiffs, as corporate vehicles through which the Individual Plaintiffs invested in the project. As a result of the Individual Plaintiffs' decision to pursue their investments through corporate entities, the Individual Plaintiffs implicitly accepted the limitations of the corporate form, including the limitation that precludes them from bringing suit as individuals for injuries felt by the corporations. *Bank of Am. Corp. v. Lembruber*, 385 F. Supp. 2d 200, 223 (S.D.N.Y. 2005) ("[I]t has long been the law of New York and this Circuit that a corporation cannot pierce the corporate veil it created for its own protection whenever doing so would be to its benefit.").

7

underlying transaction and involving the same parties, in different forums. Given this fact, it strains logic to agree with Plaintiffs' insinuation that it is more *convenient* for them to litigate the case against the Kinay Defendants here in New York (Pl. Mem. 12, 14), while simultaneously litigating a matter involving identical claims in TCI.

As the Supreme Court has stated, "[d]ismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Sincochem Int'l Co.*, 549 U.S. at 429 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)). Given these considerations, the Court concludes that while Plaintiffs' choice of forum must be taken into account, it is not entitled to "substantial deference." *See Piper Aircraft*, 454 U.S. at 260 ("[T]he presumption in favor of the respondent's forum choice [is] applied with less than maximum force because the real parties in interest are foreign."); *Wiwa*, 226 F.3d at 101 ("While any plaintiff's selection of a forum is entitled to deference, that deference increases as the plaintiff's ties to the forum increase.").

### B. Adequacy and Availability of the Foreign Forum

Under the second prong of the *forum non conveniens* test, "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003). The Kinay Defendants have represented that they are amenable to process in TCI. (Def. Mem. 10.) This satisfies the first element of the alternative forum test. *See Aguinda v. Texaco*, 303 F.3d 470, 477 (2d Cir. 2002) ("[A]n agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy th[e] [alternative forum] requirement." (quoting *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 57 (2d Cir. 2000)). Additionally, at least one court in this district has found TCI to be an adequate alternative forum, *see Lan Assoc. XVIII L.P. v. Bank of Nova Scotia*, No. 96 Civ. 1022 (JFK), 1997 WL 458753, at *3-4 (S.D.N.Y. Aug. 11, 1997), and Plaintiffs do not suggest otherwise (Pl. Mem. 15 n.12). Accordingly, the Court finds that TCI is an adequate and available alternative forum.

### C. Public and Private Interests

After determining the degree of deference owed to the plaintiffs' choice of forum and the availability of an alternative forum, courts must then "balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake." *Wiwa* 226 F.3d at 100. For the following reasons, the Court concludes that both the private and public interest factors at issue weigh heavily in favor of dismissal.

#### 1. Private Interest Factors

The Supreme Court had identified a number of "private interest" factors that may be considered by district courts when evaluating a motion to dismiss for *forum non conveniens*. These include: (a) ease of access to evidence; (b) availability of compulsory process; (c) cost for cooperative witnesses to attend trial; (d) enforceability of a judgment; and (e) all other practical matters that make a trial "easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508. "In applying these factors, 'the court should

8

focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues.'" *In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 500 (2d Cir. 2002) (quoting *Iragorri*, 274 F.3d at 74).

In this case, sources of significant evidence – physical, documentary, and testimonial – are firmly rooted in TCI. Plaintiffs argue that documentary evidence resides with individuals on several continents, and that testimony would come from parties who currently live not just in TCI, but around the world, making this case unlike others in which it was clear that the majority of the physical and testimonial evidence were in the alternative foreign forum. *See, e.g., Piper Aircraft*, 454 U.S. at 242-43 (discussing the presence of physical evidence and witness testimony regarding an airplane crash in Scotland); *Palacios v. The Coca-Cola Co.*, 757 F. Supp. 2d 347, 361 (S.D.N.Y. 2010) ("In this case, the concentration of evidence in Guatamala weighs heavily in favor of dismissal."). However, the Kinay Defendants list several witnesses in TCI or nearby who have knowledge of loan agreements, purchase agreements, architectural designs, development plans, marketing schemes, construction and engineering services, and the TCI government's investigation into the alleged fraud. (Reply 5-7.) These witnesses are unquestionably relevant to the Plaintiffs' claims and the Kinay Defendants' defenses to those claims. In some cases, those witnesses are likely the only witnesses who will be able to testify with specificity about (1) the Kinay Defendants' alleged misrepresentations and omissions and (2) whether the Kinay Defendants knew that those representations and omissions were false. Because many of these witnesses are located beyond the jurisdictional reach of this Court's compulsory process, however, they would be difficult to depose or have testify in this proceeding. *See Piper Aircraft*, 454 U.S. at 242 ("[B]ecause crucial witnesses and evidence were beyond the reach of compulsory process, and because the defendants would not be able to implead potential Scottish third-party defendants, it would be unfair to make [defendants] proceed to trial in this forum." (internal quotation marks and citation omitted)).

Furthermore, as the Kinay Defendants note, "[d]ocumenatry evidence related to the Dellis Cay land purchase, architectural design, planning, construction and engineering services, marketing and public relations, legal, sales and administration remains in the hands of the Receiver, the Provisional Liquidator, various TCI governmental departments, the TCI Commission of Inquiry, TTUTC and the TCI court system." (Reply 7.) Plaintiffs observe that the Commission of Inquiry is based in the United Kingdom, that no Commission "team members" are in TCI, and that the Liquidator for Dellis Construction, Ltd. is based in London. (Pl. Mem. 19 n.15.) However, it does not automatically follow that documentary evidence relating to those investigations is likewise in the United Kingdom. In fact, given that there are independent proceedings taking place in TCI regarding this matter and other similar matters, it is likely that relevant documentary evidence is in TCI. (Pl. Mem. 22-23; Soloway Decl. ¶ 19.) Furthermore, although the Commission "team members" and Liquidator are in the United Kingdom, the fact that they were involved in an inquiry in TCI indicates that they likely expect to return to TCI for further investigation or testimony.

9

The Court must also consider the enforceability of a judgment entered in favor of Plaintiffs. Given that the TCI Supreme Court entered a "Mareva injunction," freezing Kinay's assets until he pays the $85,037,331.61 judgment entered against him and Oguz Serim, Plaintiffs would likely have trouble enforcing a judgment in their favor against Kinay without the involvement of the TCI Supreme Court. Accordingly, this factor also weighs in favor of dismissal.

The last of the "private factors" to be considered – practical matters that make a trial "easy, expeditious and inexpensive" – likewise counsels toward the suit proceeding in TCI. The fact that proceedings initiated by Plaintiffs themselves are pending in the TCI Supreme Court, and that a government inquiry has taken place and is continuing in TCI, suggests that witnesses, parties, and evidence being used for those actions could be easily used again if the Plaintiffs pursued their action against the Kinay Defendants in TCI. With parallel actions in this Court and the TCI Supreme Court, some discovery would undoubtedly take place twice, which runs counter to the goal of making trial "easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508.

It further bears noting that although Plaintiffs fashion their Complaint as sounding in tort, these claims are ultimately the result of voluntary contractual relations between the Corporate Plaintiffs and TCI corporations. *See, e.g.*, *Wilson*, 2008 WL 2851511, at *2 ("Having invested in an Israeli-based corporation, and having chosen to bring suit based on claims that the corporation has mismanaged its affairs and has acted to benefit its two largest shareholders, . . . the plaintiffs have no fair ground to complain that these defendants insist on being sued in Israel."). Furthermore, the forum selection clauses in the underlying contracts indicate that Plaintiffs presumably found TCI to be a hospitable and satisfactory forum for dispute resolution and expected to litigate matters arising out of the Project in TCI. *See Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2d Cir. 2004) (distinguishing cases where Plaintiffs involuntarily suffered torts involving physical injury from cases where Plaintiff voluntarily sought out a business relationship abroad); *Cortec Corp. v. Erste Bank*, 535 F. Supp. 2d 403, 408 (S.D.N.Y. 2008) (noting that "[w]hile Plaintiff's claims sound in tort of interference with contract, that business tort arises out of voluntary contractual relations" and that the forum selection clauses in the underlying contracts demonstrate that litigation in a foreign country was foreseeable). Indeed, although Plaintiffs present evidence that the cost of travel to TCI tends to be greater than the cost of travel to New York (Decl. of Carrie Wallace, dated Aug. 26, 2011, Doc. No. 77, ¶¶ 5-13), the fact remains that the participants in this investment scheme – Plaintiffs, Defendants, and non-parties alike – knew full well that they were participating in a Project that centered around TCI, and therefore had to expect that disputes concerning the Project were likely to take place in TCI. The fact that Plaintiffs and many others are currently engaged in litigation in TCI further underscores this point.

Thus, considerations of the relevant private interest factors weighs strongly in favor of dismissal.

### 2. Public Interest Factors

Turning to the public interest factors, the Court must consider the following: (a) the administrative difficulties associated with court congestion; (b) the imposition of jury

10

duty on a community with no relationship to the litigation; (c) the local interest in resolving local disputes; and (d) the problems implicated in the application of foreign law. *Gulf Oil*, 330 U.S. at 508-09. As with the private interests of the parties, the Court finds that these factors weigh heavily in favor of dismissal.

### a. Application of Foreign Law

Although the parties did not brief the issue of whether New York or TCI law applies to the causes of action enumerated in the Complaint, Plaintiffs appear to concede that the applicable law for most of Plaintiffs' causes of action is TCI law. (Pl. Mem. 24.) Nevertheless, Plaintiffs argue that because the TCI legal system is based on English common law, such law will be "particularly amenable to application in United States courts." (*Id.* (quoting *Constellation Energy Commodities Grp., Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 221 (S.D.N.Y. 2011))). However, without more information on the intricacies of TCI law, the Court agrees with Defendants that "[t]he parties and this Court . . . lack . . . familiarity with the governing law in this matter" (Reply 10), and that this factor weighs in favor of dismissal.

### b. Court Congestion

Plaintiffs also submit evidence indicating that the TCI courts are under-staffed. (Decl. of Martin Green, Esq., dated Aug. 26, 2011, Doc. No. 78, ¶ 5.) However, Plaintiffs offer no comparison with regard to the congested docket in this district. Moreover, to the extent that TCI law governs this dispute, considerations of efficiency would seem to indicate that a TCI court dealing with TCI law – even if under-staffed – would be able to more efficiently resolve a dispute under TCI law than an equally congested court in which the relevant law is foreign.

### c. Imposition of Jury Duty on a Community with No Relationship to the Litigation

By characterizing Defendants' scheme as a plot to defraud New York investors, Plaintiffs insist that this is an inherently local dispute with an obvious relationship to the New York community. However, as noted above, Plaintiffs have deliberately overlooked a crucial fact. (*Supra* note 3.) Unlike the typical fraud case, in which defendants' false statements induced plaintiffs to invest in a phony or inflated stock, the Individual Plaintiffs here took the intermediate step of creating foreign corporations for the purpose of investing in the Project. Having taken that step – and there is no suggestion in the Complaint or elsewhere that the Individual Plaintiffs' creation of the Corporate Plaintiffs was in any way fraudulent or induced by Defendants – Plaintiffs must concede that the alleged fraud was ultimately perpetrated against the Corporate Plaintiffs, not the Individual Plaintiffs. Again, the law is clear that individual shareholders "may not assert claims alleging wrongs to the corporation," *Feinberg*, 2005 WL 2990633, at *4, nor may they "pierce the corporate veil [they] created for [their] own protection whenever doing so would be to [their] benefit," *Lembruber*, 385 F. Supp. at 223. The fact that the officers and shareholders of these corporations were, in many instances, New York residents, and that the alleged false statements were made to them in New York, does not alter the analysis or transform this into a New York dispute. The Corporate Plaintiffs are perfectly capable of representing their own interests and the interests of their shareholders, wherever they may reside, and the mere fact that a majority, or even the entirety, of a corporation's shareholders

11

reside in New York does not automatically render the dispute a local one.

Plaintiffs' inclusion of a twentieth cause of action under New York General Business Law § 349 does not alter this analysis. Section 349 prohibits deceptive acts and practices in the conduct of any business in the state, and extends a private right of action to "any person who has been injured" by such deceptive business practices. N.Y. Gen. Bus. Law § 349(a), (h). However, "[i]t is a 'basic point' that a deceptive practice must 'result in a transaction in which the consumer was harmed' in order to be actionable under Section 349." *Palacios*, 757 F. Supp. 2d at 358 (quoting *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 326 (N.Y. 2002)). Here, the alleged "harm" was suffered by the Corporate Plaintiffs – the entities that actually invested in the Project – and Sandrine and Stéphane Pictet, who did not form a corporate entity in order to invest. Because neither the Corporate Plaintiffs nor the Pictets are New York "consumers," Plaintiffs' claim under N.Y. Gen. Bus. Law § 349 is not enough to render this a "local dispute" or give a New York jury a significant "relationship to the litigation."

### d. Local Interest in Resolving Local Disputes

Ultimately, the Court's analysis of the public interest factors turns on whether this is a local dispute involving New York residents or a TCI dispute involving TCI corporations and a real estate development project in that country. Even a cursory review of the Complaint reveals that this is the latter, and that New York does not have a stronger interest than TCI in resolving this dispute.

Plaintiffs' assert that because the Kinay Defendants allegedly marketed the Project directly to New York residents, and several New York residents are now plaintiffs in this suit, New York has a strong interest in resolving this dispute. But by Plaintiffs' own admission, the Complaint details a "massive fraudulent scheme perpetrated by the Kinay Defendants in connection with the *global* marketing, financing and development of a promised luxury mixed-use property" in TCI. (Pl. Mem. 2 (emphasis added).) Though Kinay may have targeted New York as a market for investors in the Project, the Kinay Defendants submit that the marketing was not directed solely at New York residents – rather, the Project was marketed to affluent clientele across the globe.[4] (Reply 8-9.) As a result of the Kinay Defendants' advertising campaign, 50% of the buyers were from the United States, 40% were from Europe, and 10% were from Latin America. New York, therefore, does not have a stronger interest than any other jurisdiction with affluent people, even if many of the U.S. buyers were from New York.

By contrast, TCI has a strong interest in resolving this particular dispute because it involves allegations of corruption and bribery among TCI government officials. The ongoing investigation into Dellis Cay and government fraud suggests that TCI authorities are addressing these matters, which go to the heart of the TCI government's public function. *See Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 392 (S.D.N.Y. 2009) (finding that Sweden

---

[4] Furthermore, registering with the New York Attorney General does not necessarily indicate the Kinay Defendants' determination to exclusively target New York residents; as the Kinay Defendants note, registering with the New York Attorney General is a requirement to do business in the state.

12

had a "particularly strong interest in adjudicating [the] dispute" when plaintiff's allegations focused on "deliberate misrepresentations" and "bribes and kickbacks" by one of the largest banks in Sweden); *RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 2295897, at * (S.D.N.Y. Aug. 10, 2007) (denying motion to dismiss for *forum non conveniens* but noting that "the compelling public interest of Grenada in adjudicating disputes arising from accusations of corruption against one of its public officials weigh[s] in favor of dismissal"). Given TCI's criminal inquiry focused on Kinay and the Project, TCI has a "strong interest in resolving civil disputes that arise out of the same acts on which a criminal complaint is based." *Online Payment Solutions*, 638 F. Supp. 2d at 392. Furthermore, although Plaintiffs are not parties to the pending Dellis Cay investigation and do not stand to recover from that investigation, surely the evidence gathered in that investigation will be relevant to their claims against the Kinay Defendants.

In short, the instant matter is not ultimately a "local" New York dispute; rather, it is an inherently TCI-based controversy. Thus, New York certainly does not have a stronger interest in resolving the dispute than TCI, which has significant "public interests at stake." *Wiwa*, 226 F.3d at 100. Accordingly, the Court finds that the public interest factors likewise "tilt[] heavily in favor of" TCI and support dismissal of this action on *forum non conveniens* grounds. *Abdullahi*, 562 F.3d at 189.

### III. CONCLUSION

At the end of the day, this case involves a real estate investment in TCI, individual witnesses in TCI, TCI-based corporations, the TCI government, and a second, parallel litigation taking place in the TCI courts. The Individual Plaintiffs – both American and foreign – formed corporations under TCI law to pursue this investment. These Plaintiffs signaled their comfort with the judicial process in TCI, both by signing contracts with forum selection clauses and by bringing suit against former defendants to this action in TCI. Having considered the record in its entirety, the Court is persuaded that TCI is an "available and adequate forum" and that "the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Id.*.

Accordingly, Defendant's motion to dismiss is granted. The Clerk of the Court is respectfully requested to terminate the motion at Doc. No. 69 and close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 27, 2012
New York, New York
\* \* \*

Plaintiffs are represented by Eric Donovan Dowell, Eric David Sherman, Joshua David Bernstein, and Todd Evan Soloway of Pryor Cashman LLP, 7 Times Square, New York, New York 10036.

Defendants are represented by Leslie Scot Wybiral and Louis Fox Burke of Louis F. Burke PC, 460 Park Avenue, New York, New York 10022.

13